UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDLEY GAYLE,<br><br>        Plaintiff,<br><br>vs.<br><br>NATIONAL RAILROAD PASSENGER CORP., T.C. JOHNSON COMPANY, TRANSPORTATION RESOURCES INC., MITCHELL EQUIPMENT CORPORATION, CRESCENT CONTRACTING, INC., STV INCORPORATED, HATCH MOTT MACDONALD, INCORPORATED STV/HMM, TEREX CORPORATION, KOEHRING CRANES, INC. dba TEREX CRANES WAVERLY TEREX CRANES, INC., and ATLANTIC CRANE INSPECTION SERVICES INC.<br><br>        Defendants. | **Civil Action No.: 06 Civ 6956 (PAC)(GWG)**<br><br>**ECF CASE**<br><br>Related Cases:<br>06-Civ-6195<br>06-Civ-6196 |

**DEFENDANT'S RULE 56.1 STATEMENT OF
UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.1 of the Southern and Eastern Districts of New York, defendant Atlantic Crane Inspection Services, Inc. ("Atlantic") submits the following statement of undisputed material facts in support of its motion for summary judgment dismissing all claims in the captioned three consolidated actions (collectively, the "Actions"), pursuant to Rule 56 (c) of the Federal Rules of Civil Procedure[1]

---

[1] The Actions are case no. 04 CV 5760 (Louis Cevasco, et al. v. National Railroad Passenger Corporation, et al.), case no. 05 CV 7419 (Jugal Sood v. National Railroad Passenger Corporation, et al.) case no. 06 CV 6956 (Edley Gayle v. National Railroad Passenger Corporation, et. al.) case no. 06 (CV 6195 (Joseph Adornetti, et al. v. National Railroad Passenger Corporation, et al.), and case no. 06 CV 6196 (Giralmo Vitale v. National Railroad

1. At the time of the incident from which the five Actions stem, plaintiff Cevasco was an employee of STV (see Snyder Decl. Exh. 1 at 12-13); plaintiff Sood was an employee of Hatch Mott MacDonald, Incorporated (HMM) (see Snyder Decl., Exh. 2 at 30-39) plaintiff Gayle was an employee of National Railroad Passenger Corporation (Amtrak) (see Snyder Decl., Exh. 3 at 19-20); plaintiff Adornetti was an employee of Crescent Contracting, Inc. (Crescent) (see Snyder Decl., Exh. 4 at 30); and plaintiff Vitale was an employee of Crescent (see Snyder Decl., Exh. 5 at 37-38, 52) .[2]

2. On or about November 7, 2002, Amtrak entered into a contract with Crescent in connection with a construction project undertaken by Amtrak to install ventilation and fire standpipes to provide air and water inside tunnels that service Amtrak passenger trains traveling under the East River in New York City (the "Standpipe Project"). See Snyder Decl., Exh. 6.

3. On or about December 11, 2001, Amtrak entered into a contract with STV/HMM (the "STV/HMM Contract") for STV/HMM to provide Amtrak "construction management for the installation of the East and North River Tunnel Fire Standpipe System." See Snyder Decl., Exh. 7

4. On July 9, 2004, three separate work groups were scheduled to work concurrently on East River tunnel main line track No. 1, which had been taken out of service. See Snyder Decl., Exh. 8 at 16-17, 24; Exh. 9 at 32,44; Exh. 10 at 15, 21, 50; Exh. 11 at 40-421; Exh. 3 at 56-59.

---

Passenger Corporation, et al.) The Cevasco and Sood claims have been settled; the other three remain.

[2] Exhibits ("Exh.") referred to are annexed to the accompanying Declaration of Richard E. Snyder dated July __, 2009.

5. The first group, working on the western end, was responsible for changing out railroad ties at First Avenue in the East River tunnel. See Snyder Decl., Exh. 8 at 16, 17; Exh. 3 at 56-58.

6. The second group was working on the Standpipe Project at the east portal of Tunnel Line 1. See Snyder Decl., Exh. 8 at 16-17, 24; Exh. 9 at 32, 44; Exh. 10 at 15, 21, 50; Exh. 11 at 40-41; Exh. 1 at 13-14; Exh. 3 at 49.

7. The third group included a gang of electrical traction substation employees working at Sub 44 to change out a breaker. See Snyder Decl., Exh. 8 at 24; Exh. 9 at 32, 36-37, 42-43; Exh. 11 at 40-41; Exh. 3 at 58-59.

8. This group consisted of employees from different Amtrak departments, including Bridge and Buildings Department employees, Amtrak Pilots and a TEREX Crane Operator, David Rollins. See Snyder Decl., Exh. 9 at 36-37, 42; Exh. 12 at 60; Exh. 10 at 15; Exh. 11 at 40-41.

9. At about 3:40 a.m., as the TEREX Crane Operator, Mr. Rollins, started to extend his outriggers, the high rail began to roll. See Snyder Decl., Exh. 12 at 74-75; Exh. 10 at 34-35, 42.

10. Mr. Rollins was unable to stop the crane, which traveled west on track No. 1 towards the east portal of the Tunnel where the Standpipe Project contractors were working. See Snyder Decl., Exh. 8 at 65; Exh. 9 at 81-82, Exh. 12 at 75-76, 78; Exh. 10 at 56-57, 61.

11. The crane collided with a Crescent truck (flatbed high rail truck) that was being used by the Standpipe Project contractors, and that Crescent truck collided with plaintiff Vitale's Crescent truck and plaintiff Vitale's Crescent truck collided with a third Crescent truck. See Snyder Decl., Exh. 13

97-98; Exh. 12 at 115; Exh. 10 at 61; Exh. 11 at 73; Exh. 1 at 60; Exh. 2 at 91. All the Crescent trucks were on main line no. 1. Id.

12. The crane had been purchased by Amtrak from TC Johnson (now Transportation Resources, Inc., "TRI") following specifications prepared by Amtrak. See Snyder Decl. Exh. 14, Deposition of Joseph J. Vanderbosch, T155:2-164:10; 169:8-10; Exh. 15; Exh. 16.

13. The crane was a TEREX RT230 crane. See Snyder Decl., Exh. 17; Deposition of Estel Lovitt T13:17-14:2; 15:4-21:2.

14. Mitchell Equipment Corporation designed, manufactured and added high rail equipment to the TEREX crane. See Snyder Decl., Exh. 17, Deposition of Estel Lovitt T13:17-14:2; 15:4-21:2.

15. Atlantic performed inspections of the TEREX RT230 crane for Amtrak pursuant to purchase orders. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein at T:21:3-20; Exhibit 19.

16. The course of dealing between Amtrak and Atlantic was that Atlantic would contact Amtrak essentially monthly; make arrangements to perform inspections at Amtrak locations; and would inspect the equipment Amtrak made available there. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein at T:22:13-24:9; 100:8-104:22; Exh. 20, Deposition of William Hottenstein T:86:1-15; 141:13-144:17; 302:14-25.

17. Atlantic's two principals Clarence Hottenstein and William Hottenstein performed most of the inspections for Amtrak. See Snyder Decl., Exh. 20, Deposition of William Hottenstein T90:8-19; 135:12-14; Exh. 21, Deposition of Robert Tripp, T29:6-20.

18. The Hottensteins are qualified crane inspectors. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T8:2-13:15; Exh. 20, Deposition of William Hottenstein T13:16-14:24; 19:9-27:8.

19. The Hottensteins are not engineers by degree or license and are not mechanics. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T11:21-24; Exh. 20, Deposition of William Hottenstein T:222:6-223:3.

20. Atlantic would note deficiencies observed in the inspection, but would not diagnose mechanical or other problems and does not perform repairs or maintenance. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T78:23-80:7; 110:19-23; Exh. 20, Deposition of William Hottenstein T:149:11-16; 168:4-9; 248:25-249:9; Exh. 22, Deposition of Peveraro I T119:22-120:7.

21. Atlantic would complete an inspection report, which was given to Amtrak noting any deficiencies See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T:85:4-12; 97:22-99:17; 125:24-126:3; Exh. 20, Deposition of William Hottenstein T:47:10-48:23; 88:14-24; 140:22-141:9; 144:18-146:3; 278:21-280:11; Exh. 21, Deposition of Tripp T:29:6-30:7; Exh. 22, Deposition of Daniel Peveraro I T26:8-19; 29:6-13; Exh. 26.

22. A crane inspection takes about an hour and a half. See Snyder Decl., Exh. 20, Deposition of William Hottenstein T:261:8-14.

23. During an inspection a crane is observed visually or manually and put through certain functions by an Amtrak operator. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T31:11-32:5; Exh. 20, Deposition of William Hottenstein T48:24-50:15; 87:19-89:2; 159:19-160:16; 261:15-266:1.

24. Amtrak corrects problems noted during an inspection, often on the spot. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T107:3-8; Exh. 20, Deposition of William Hottenstein T149:6-25; Exh. 23, Deposition of Charles McMahon I T22:22-23:25; Exh. 24, Deposition of Peveraro II T:208-11-20. Or, in some cases, Amtrak arranges for repairs by an outside company. See Snyder Decl., Exh. 25, Deposition of Christopher Shearer T41:6-42:3; Exh. 22, Deposition of Peveraro I T:120:10-16; Exh. 24, Deposition of Peveraro II T24:10-27:21.

25. If the crane is unsafe at the time of an inspection, it is red tagged by Amtrak. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T122:12-123:13.

26. The crane is inspected before each use or daily by Amtrak operators. See Snyder Decl., Exh. 20, Deposition of William Hottenstein T:168:10-18; Exh. 21, Deposition of Tripp T15:22-16:21; 19:10-16; 22:3-24:18; 25:23-26:11; Exh. 23, Deposition of McMahon I T24:10-14; 19:6-18; Exh. 27, Deposition of McMahon II T:123:13-124:3; Exh. 22, Deposition of Peveraro I T:21:9-22:19; Exh. 24, Deposition of Peveraro II T:89:16-90:5.

27. The crane was last inspected before the accident by Atlantic (Clarence Hottenstein) on April 19, 2004. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T:83:19-86:3; also Exh. 26.

28. The report for that inspection noted certain deficiencies: (1) the high rail guard at the right rear corner was bent; (2) two lights were out; (3) the main hoist did not have enough cable to extend the boom fully when rigged with a four part line; (4) a high rail hydraulic hose on the right side of the crane

had one coating or insulation down to the metal hose; (5) the crane shut off when swinging the upper portion. See Snyder Decl., Exh. 26.

29. No hydraulic leaks were noted at the time of the April 19, 2004 inspection. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T134:11-135:6.

30. The items noted on the April 19, 2004 inspection report are not related to the freewheeling, which caused the accident. See Snyder Decl., Exh. 28, Mark Lawrence Report, pages 5; 11.

31. Amtrak had the electrical problem noted on the April 19, 2004 inspection repaired by A-1 Crane in April. See Snyder Decl., Exh. 23, Deposition of McMahon I T:200:19-204:25; Exh. 22, Deposition of Peveraro I T118:7-24; Exh. 24, Deposition of Peveraro II T24:10-27:21; Exh. 25, Deposition of Shearer T12:9-13:2; 38:6-40:12 and Exh. 29.

32. After the crane was repaired in April it was restored to service with no known problems prior to the accident. See Snyder Decl., Exh. 27, Deposition of McMahon II T:122:23-124:3; Exh. 22, Deposition of Peveraro I T33:21-34:4; 106:6-13; 156:18-157:24.

33. Operator Rollins inspected the crane on July 9, 2004 prior to use and found no problems or hydraulic leaks. See Snyder Decl., Exh. 30, Deposition of David Rollins I T:62:10-64:15; Exh. 31, Deposition of David Rollins II T:237:8-13; Exh. 32, Deposition of Brian Earp T74:17-25.

34. Rollins encountered no problems with the operation of the crane that evening prior to the crane going into freewheel. See Snyder Decl., Exh. 31, Deposition of David Rollins II. T:270:3-15; 273:13-20.

35. The crane had not freewheeled prior to that date. See Snyder Decl., Exh. 21, Deposition of Tripp T50:7-11; 301:19-302:2; Exh. 31, Deposition of Rollins II T:280:15-281:14, and therefore Atlantic would have no knowledge of freewheeling. See Snyder Decl., Exh. 20, Deposition of William Hottenstein T:288:8-290:9.

36. No hydraulic leaks were observed from the crane after the accident. See Snyder Decl., Exh. 21, Deposition of Tripp T54:10-23; 57:11-60:2; 194:25-195:16; Exh. 23, Deposition of McMahon I T:48-2-50:1; Exh. 27, Deposition of McMahon II T:24:4-7; Exh. 22, Deposition of Peveraro I T:80:25-81:11; Exh. 33, Deposition of William Zwolinski T176:9-177:20.

37. After the accident the crane was inspected by various parties' representatives and experts and was tested extensively. See Snyder Decl. Exh. 23, Exhs. 34-40.

> **MORGAN MELHUISH ABRUTYN**
>
> By: _/s/ Richard E. Snyder_
> **RICHARD E. SNYDER, ESQ.**
> 651 West Mount Pleasant Avenue
> Suite 200
> Livingston, New Jersey 07039
> Attorneys for Defendant
> ATLANTIC CRANE INSPECTION SERVICES, INC.
> Our File No. SNY 27-888
> (RES 9998)

DATED: July 15, 2009