**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDLEY GAYLE,<br><br>    Plaintiff,<br><br>  vs.<br><br>NATIONAL RAILROAD PASSENGER<br>CORP., T.C. JOHNSON COMPANY,<br>TRANSPORTATION RESOURCES INC.,<br>MITCHELL EQUIPMENT CORPORATION,<br>CRESCENT CONTRACTING, INC., STV<br>INCORPORATED, HATCH MOTT<br>MACDONALD, INCORPORATED<br>STV/HMM, TEREX CORPORATION,<br>KOEHRING CRANES, INC. dba TEREX<br>CRANES WAVERLY TEREX CRANES,<br>INC., and ATLANTIC CRANE INSPECTION<br>SERVICES INC.<br><br>    Defendants. | Civil Action No.: 06 Civ 6956<br>(PAC)(GWG)<br><br><br>**ECF CASE**<br><br>Related Cases:<br>06-Civ-6195<br>06-Civ-6196 |

**BRIEF IN SUPPORT OF DEFENDANT**
**ATLANTIC CRANE'S SUMMARY JUDGMENT MOTION**

**Richard E. Snyder, Esq.**
**Of Counsel and On the Brief**

       **MORGAN MELHUISH ABRUTYN**
        651 West Mount Pleasant Avenue
        Suite 200
        Livingston, New Jersey 07039
        Attorneys for Defendant
        ATLANTIC CRANE INSPECTION
        SERVICES, INC.

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................ ii

Preliminary Statement ....................................................................... 2

Statement of Facts ............................................................................. 3

Summary Judgment Standard ......................................................... 11

Argument ......................................................................................... 12
 Point I ......................................................................................... 12
  There Is No Negligence On The Part Of Atlantic Crane ................... 12

 Point II ........................................................................................ 15
  There Is No Proximate Cause Between Atlantic's
  Conduct And The Accident ............................................................ 15

 Point III ....................................................................................... 18
  The Claim For Punitive Damages Must Be Dismissed ..................... 18

Conclusion ...................................................................................... 20

## TABLE OF AUTHORITIES

**Page**

**Federal Cases**

Brucculleri v. National Railroad Passenger Corp.,
  1996 WL  328, 748 (S.D.N.Y. 1988)............................................................ 16

Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) ..................................... 11

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ................................... 11

Marvel Characters, Inc. v. Simon,  310 F.3d 280, 286 (2d Cir. 2002)............. 11

Natsushita Elec. Indus. Co. v. Zenith Radio Corp.,
  475 U.S. 574, 587 (1986)                                                              11

Pisano v. The SS Benny Skou, 346 F.2d 993 (2d Cir. 1965),
  *cert. denied* 382 U.S. 938, 86 S.Ct. 389. 15
  L. Ed.2d 349 (U.S.N.Y. 1965) ................................................................. 17


**State Cases**

Adelman v. Adelman, 191 Misc.2d 281, 284, 741 N.Y.S.2d
  841, 844-5 (Sup. Ct. 2002) ....................................................................... 19

Brookins v. Pennsylvania R. Co., 202 Misc. 467, 110
  N.Y.S.2d 541 (Sup. Ct. 1952) ................................................................... 16

Derdiarian v. Felix Contracting Corp., 51 N.Y.2d
  308, 315, 434 N.Y.S.2d 166, 169 (1980) .................................................... 15

Evans v. Stranger, 307 A.D.2d 439, 762 N.Y.S.2d 678 (3rd Dept. 2003)
  4 N.Y. 3d 707, 828 N.E.2d 620, 798 N.Y.S.2d 517 (2005)........................... 19

Giblin v. Murphy, 73 N.Y.2d 769, 772, 536 N.Y.S.2d 54,
  532 N.E.2d 1282 ....................................................................................... 18

Hoggard v. Otis Elevator Co., 276 NY.S.2d 681, 687
  (Sup. Ct. Trial Term, N.Y. County 1966) *appeal denied*
  21 N.Y.2D 641, 287 N.Y.S.2d 1026 (1968) ................................................. 15

## TABLE OF AUTHORITIES

**Page**

Home Ins. Co. v. American Home Prods. Corp.,
    75 N.Y.2d 196, 204, 551 N.Y.A.2d 481, 550 N.E.2d 930............................. 18

Kopec v. Hempstead Gardens Inc., 264 A.D.2d 714, 696
    N.Y.S.2d 53 (2d Dept. 1999) ....................................................... 19

Le Mistral, Inc. v. Columbia Broadcasting Sys.,
    61 A.D. 491, 494, 402 N.Y.S.2d 815 ........................................ 18

Lee v. Health Force, Inc., 268 A.D.2d 564, 702 N.Y.S.2d 108 ......................... 19

Mack v. Altmans Stage Lighting Co., 470 N.Y.S.2d 664, 667
    (App. Div. 2d Dep't 1984)......................................................... 16

Mack v. Altmans Stage Lighting Company,
    98 A.D.2d 468, 470 N.Y.S.2d 664 (Sup. Ct. 1984)                          17

Megally v. LaPorta, 253 A.D.2d 35, 679 N.Y.S.2d 649 (2d Dept. 1998)          17

Ordonez v. Long Island R.Co., 492 N.Y.S.2d 442, 112 A.D.2d
    923 (2d Dept. 1985)................................................................ 16

Pagan v. Goldberger, 382 N.Y.S.2d 549, 551
    (App. Div. 2d De't. 1976)......................................................... 16

Prozeralik v. Capital Cities Communications, Inc., 82 N.Y.2d466,
    478-480, 605 N.Y.S.2d 218, 6267 N.E.2d 34.............................. 18

Rey v. Park View Nursing Home, 262 A.D.2d 624, 627, 692
    N.Y.S.2d 686 ....................................................................... 18

Rodriquez v. ProCable Services, 266 A.D.2d 894, 697
    N.Y.S.2d 440 (4th Dept. 1999) .................................................. 17

Rudolph v. Lynn, 16 A.D.3d 261, 792 N.Y.S.2d 410 (1st Dept. 2005) ............ 19

Seynave v. Hudson Moving and Storage Inc., 261 A.D.2d 168, 690
    N.Y.S.2d 16) (1st Dept. 1999).................................................... 19

Sheehan v. City of New York, 40 NY2d 496, 387
    N.Y.S.2d 92, 354 N.E.2d 832 (1976)........................................... 16

# TABLE OF AUTHORITIES

**Page**

Sitaras v. James Ricciardi & Sons, Inc., 545
   N.Y.S.2d 937, 154 A.D.2d 451 (2d Dept. 1989) .......................................... 13

Spencieri v. Laksy, 94 N.Y.2d 231, 701
   N.Y.S.2d 689, 723 N.E.2d 544 (1999)......................................................... 13

States v. Lourdes Hosp., 100 N.Y.2d 208, 762
   N.Y.S.2d 1, 792 N.E.2d 151 (2003) ............................................................ 13

V.J.V. Transport Corp. v. Santiago, 173 A.D.2d 537, 538, 570
   N.Y.S.2d 138 ........................................................................................... 18

Walker v. Sheldon, 10 N.Y.2d 401, 404-405, 223
   N.Y.S.2d 488, 179 N.E.2d 497 .................................................................. 18

Williams v. Pelican Pest Control Inc., 11 A.D. 3d 454, 782
   N.Y.S.2d 748 (2d Dept. 2004)................................................................... 19

## Federal Rules

Fed. R. Civ. P. 56(c) ..................................................................................... 11

## PRELIMINARY STATEMENT

These consolidated actions are for personal injuries allegedly sustained by plaintiffs Cevasco, Sood, Gayle, Adornetti and Vitale[1] following a collision involving a high rail crane that occurred on July 10, 2004 while plaintiffs and others were working inside of an East River tunnel.

Atlantic Crane Inspection Services, Inc. (Atlantic) moves for summary judgment. Atlantic performed inspections of the crane for Amtrak during which certain deficiencies, if present, would be noted.  Repairs were performed by or through Amtrak by others.  The last inspection prior to the action was April 19, 2004.   The crane was repaired and restored to service with no apparent problems prior to the accident.

Parties have exchanged liability expert reports.   No report expresses opinions with respect to Atlantic Crane.

---

[1] The Cevasco and Sood claims have been settled leaving the Gayle, Adornetti and Vitale actions open.

## STATEMENT OF FACTS

Pursuant to Local Rule 56.1 of the Southern and Eastern Districts of New York, defendant Atlantic Crane Inspection Services, Inc. ("Atlantic") submits the following statement of undisputed material facts in support of its motion for summary judgment dismissing all claims in the captioned three consolidated actions (collectively, the "Actions"), pursuant to Rule 56 (c) of the Federal Rules of Civil Procedure[2]

At the time of the incident from which the five Actions stem, plaintiff Cevasco was an employee of STV (see Snyder Decl. Exh. 1 at 12-13); plaintiff Sood was an employee of Hatch Mott MacDonald, Incorporated (HMM) (see Snyder Decl., Exh. 2 at 30-39) plaintiff Gayle was an employee of National Railroad Passenger Corporation (Amtrak) (see Snyder Decl., Exh. 3 at 19-20); plaintiff Adornetti was an employee of Crescent Contracting, Inc. (Crescent) (see Snyder Decl., Exh. 4 at 30); and plaintiff Vitale was an employee of Crescent (see Snyder Decl., Exh. 5 at 37-38, 52) .[3]

On or about November 7, 2002, Amtrak entered into a contract with Crescent in connection with a construction project undertaken by Amtrak to install ventilation and fire standpipes to provide air and water inside tunnels that service Amtrak passenger trains traveling under the East River in New York City (the "Standpipe Project"). See Snyder Decl., Exh. 6.

---

[2] The Actions are case no. 04 CV 5760 (Louis Cevasco, et al. v. National Railroad Passenger Corporation, et al.), case no. 05 CV 7419 (Jugal Sood v. National Railroad Passenger Corporation, et al.) case no. 06 CV 6956 (Edley Gayle v. National Railroad Passenger Corporation, et. al.) case no. 06 (CV 6195 (Joseph Adornetti, et al. v. National Railroad Passenger Corporation, et al.), and case no. 06 CV 6196 (Giralmo Vitale v. National Railroad Passenger Corporation, et al.)  The Cevasco and Sood claims have been settled; the other three remain.
[3] Exhibits ("Exh.") referred to are annexed to the accompanying Declaration of Richard E. Snyder dated July __, 2009.

On or about December 11, 2001, Amtrak entered into a contract with STV/HMM (the "STV/HMM Contract") for STV/HMM to provide Amtrak "construction management for the installation of the East and North River Tunnel Fire Standpipe System." See Snyder Decl., Exh. 7

On July 9, 2004, three separate work groups were scheduled to work concurrently on East River tunnel main line track No. 1, which had been taken out of service. See Snyder Decl., Exh. 8 at 16-17, 24; Exh. 9 at 32,44; Exh. 10 at 15, 21, 50; Exh. 11 at 40-421; Exh. 3 at 56-59.

The first group, working on the western end, was responsible for changing out railroad ties at First Avenue in the East River tunnel. See Snyder Decl., Exh. 8 at 16, 17; Exh. 3 at 56-58.

The second group was working on the Standpipe Project at the east portal of Tunnel Line 1. See Snyder Decl., Exh. 8 at 16-17, 24; Exh. 9 at 32, 44; Exh. 10 at 15, 21, 50; Exh. 11 at 40-41; Exh. 1 at 13-14; Exh. 3 at 49.

The third group included a gang of electrical traction substation employees working at Sub 44 to change out a breaker. See Snyder Decl., Exh. 8 at 24; Exh. 9 at 32, 36-37, 42-43; Exh. 11 at 40-41; Exh. 3 at 58-59.

This group consisted of employees from different Amtrak departments, including Bridge and Buildings Department employees, Amtrak Pilots and a TEREX Crane Operator, David Rollins. See Snyder Decl., Exh. 9 at 36-37, 42; Exh. 12 at 60; Exh. 10 at 15; Exh. 11 at 40-41.

At about 3:40 a.m., as the TEREX Crane Operator, Mr. Rollins, started to extend his outriggers, the high rail began to roll. See Snyder Decl., Exh. 12 at

74-75; Exh. 10 at 34-35, 42.  Mr. Rollins was unable to stop the crane, which traveled west on track No. 1 towards the east portal of the Tunnel where the Standpipe Project contractors were working. See Snyder Decl., Exh. 8 at 65; Exh. 9 at 81-82, Exh. 12 at 75-76, 78; Exh. 10 at 56-57, 61.

The crane collided with a Crescent truck (flatbed high rail truck) that was being used by the Standpipe Project contractors, and that Crescent truck collided with plaintiff Vitale's Crescent truck and plaintiff Vitale's Crescent truck collided with a third Crescent truck. See Snyder Decl., Exh. 13 97-98; Exh. 12 at 115; Exh. 10 at 61; Exh. 11 at 73; Exh. 1 at 60; Exh. 2 at 91.  All the Crescent trucks were on main line no. 1. Id.

The crane had been purchased by Amtrak from TC Johnson (now Transportation Resources, Inc., "TRI") following specifications prepared by Amtrak. See Snyder Decl. Exh. 14, Deposition of Joseph J. Vanderbosch, T155:2-164:10; 169:8-10; Exh. 15; Exh. 16.

The crane was a TEREX RT230 crane. See Snyder Decl., Exh. 17; Deposition of Estel Lovitt T13:17-14:2; 15:4-21:2.   Mitchell Equipment Corporation designed, manufactured and added high rail equipment to the TEREX crane. See Snyder Decl., Exh. 17, Deposition of Estel Lovitt T13:17-14:2; 15:4-21:2.

Atlantic performed inspections of the TEREX RT230 crane for Amtrak pursuant to purchase orders. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein at T:21:3-20; Exhibit 19.

The course of dealing between Amtrak and Atlantic was that Atlantic would contact Amtrak essentially monthly; make arrangements to perform inspections at Amtrak locations; and would inspect the equipment Amtrak made available there. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein at T:22:13-24:9; 100:8-104:22; Exh. 20, Deposition of William Hottenstein T:86:1-15; 141:13-144:17; 302:14-25.

Atlantic's two principals Clarence Hottenstein and William Hottenstein performed most of the inspections for Amtrak.   See Snyder Decl., Exh. 20, Deposition of William Hottenstein T90:8-19; 135:12-14; Exh. 21, Deposition of Robert Tripp, T29:6-20.

The Hottensteins are qualified crane inspectors. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T8:2-13:15; Exh. 20, Deposition of William Hottenstein T13:16-14:24;  19:9-27:8.   The Hottensteins are not engineers by degree or license and are not mechanics. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T11:21-24; Exh. 20, Deposition of William Hottenstein T:222:6-223:3.

Atlantic would note deficiencies observed in the inspection, but would not diagnose mechanical or other problems and does not perform repairs or maintenance. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T78:23-80:7; 110:19-23; Exh. 20, Deposition of William Hottenstein T:149:11-16; 168:4-9; 248:25-249:9; Exh. 22, Deposition of Peveraro I T119:22-120:7.

Atlantic would complete an inspection report, which was given to Amtrak noting any deficiencies See Snyder Decl., Exh. 18, Deposition of Clarence

Hottenstein T:85:4-12; 97:22-99:17; 125:24-126:3; Exh. 20, Deposition of William Hottenstein T:47:10-48:23; 88:14-24; 140:22-141:9; 144:18-146:3; 278:21-280:11; Exh. 21, Deposition of Tripp T:29:6-30:7; Exh. 22, Deposition of Daniel Peveraro I T26:8-19; 29:6-13; Exh. 26.

A crane inspection takes about an hour and a half. See Snyder Decl., Exh. 20, Deposition of William Hottenstein T:261:8-14. During an inspection a crane is observed visually or manually and put through certain functions by an Amtrak operator. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T31:11-32:5; Exh. 20, Deposition of William Hottenstein T48:24-50:15; 87:19-89:2; 159:19-160:16; 261:15-266:1.

Amtrak corrects problems noted during an inspection, often on the spot. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T107:3-8; Exh. 20, Deposition of William Hottenstein T149:6-25; Exh. 23, Deposition of Charles McMahon I T22:22-23:25; Exh. 24, Deposition of Peveraro II T:208-11-20. Or, in some cases, Amtrak arranges for repairs by an outside company. See Snyder Decl., Exh. 25, Deposition of Christopher Shearer T41:6-42:3; Exh. 22, Deposition of Peveraro I T:120:10-16; Exh. 24, Deposition of Peveraro II T24:10-27:21.

If the crane is unsafe at the time of an inspection, it is red tagged by Amtrak. See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T122:12-123:13.

The crane is inspected before each use or daily by Amtrak operators. See Snyder Decl., Exh. 20, Deposition of William Hottenstein T:168:10-18; Exh. 21,

Deposition of Tripp T15:22-16:21; 19:10-16; 22:3-24:18; 25:23-26:11; Exh. 23, Deposition of McMahon I T24:10-14; 19:6-18; Exh. 27, Deposition of McMahon II T:123:13-124:3; Exh. 22, Deposition of Peveraro I T:21:9-22:19; Exh. 24, Deposition of Peveraro II T:89:16-90:5.

The crane was last inspected before the accident by Atlantic (Clarence Hottenstein) on April 19, 2004. <u>See</u> Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T:83:19-86:3; also Exh. 26.

The report for that inspection noted certain deficiencies: (1) the high rail guard at the right rear corner was bent; (2) two lights were out; (3) the main hoist did not have enough cable to extend the boom fully when rigged with a four part line; (4) a high rail hydraulic hose on the right side of the crane had one coating or insulation down to the metal hose; (5) the crane shut off when swinging the upper portion. <u>See</u> Snyder Decl., Exh. 26.

No hydraulic leaks were noted at the time of the April 19, 2004 inspection. <u>See</u> Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T134:11-135:6.

The items noted on the April 19, 2004 inspection report are not related to the freewheeling, which caused the accident. <u>See</u> Snyder Decl., Exh. 28, Mark Lawrence Report, pages 5; 11.

Amtrak had the electrical problem noted on the April 19, 2004 inspection repaired by A-1 Crane in April. <u>See</u> Snyder Decl., Exh. 23, Deposition of McMahon I T:200:19-204:25; Exh. 22, Deposition of Peveraro I T118:7-24; Exh.

24, Deposition of Peveraro II T24:10-27:21; Exh. 25, Deposition of Shearer T12:9-13:2; 38:6-40:12 and Exh. 29.

After the crane was repaired in April it was restored to service with no known problems prior to the accident. See Snyder Decl., Exh. 27, Deposition of McMahon II T:122:23-124:3; Exh. 22, Deposition of Peveraro I T33:21-34:4; 106:6-13; 156:18-157:24.

Operator Rollins inspected the crane on July 9, 2004 prior to use and found no problems or hydraulic leaks. See Snyder Decl., Exh. 30, Deposition of David Rollins I T:62:10-64:15; Exh. 31, Deposition of David Rollins II T:237:8-13; Exh. 32, Deposition of Brian Earp T74:17-25.

38.   Rollins encountered no problems with the operation of the crane that evening prior to the crane going into freewheel.  See Snyder Decl., Exh. 31, Deposition of David Rollins II. T:270:3-15; 273:13-20.

The crane had not freewheeled prior to that date. See Snyder Decl., Exh. 21, Deposition of Tripp T50:7-11; 301:19-302:2; Exh. 31, Deposition of  Rollins II T:280:15-281:14, and therefore Atlantic would have no knowledge of freewheeling. See Snyder Decl., Exh. 20, Deposition of William Hottenstein T:288:8-290:9.

No hydraulic leaks were observed from the crane after the accident. See Snyder Decl., Exh. 21, Deposition of Tripp T54:10-23; 57:11-60:2; 194:25-195:16; Exh. 23, Deposition of McMahon I T:48-2-50:1; Exh. 27, Deposition of McMahon II T:24:4-7; Exh. 22, Deposition of Peveraro I T:80:25-81:11; Exh. 33, Deposition of William Zwolinski T176:9-177:20.

After the accident the crane was inspected by various parties' representatives and experts and was tested extensively. See Snyder Decl. Exh. 23, Exhs. 34-40.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002). In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Natsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see Marvel Characters, 310 F.3d at 286. Summary judgment is proper when reasonable minds could not differ as to the import of the evidence. Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

**ARGUMENT**

**POINT I**

**THERE IS NO NEGLIGENCE ON THE PART OF ATLANTIC CRANE**

This action involves an unusual event of freewheeling of a RT230 crane being utilized on railroad tracks. The description of the crane and its relevant functions is not in dispute. One such description is set forth at pages 2-5 of the Lawrence Report (Exhibit 28). Similar descriptions are contained in the other expert reports (Exhibits 34 through 40).

Nothing observed during the April 19, 2004 inspection of the crane by Atlantic is related to the July 10, 2004 accident. There is no evidence that anything present on April 19, 2004 and observable given the nature and scope of the inspection and the knowledge of Atlantic would have caused anything different to have been done with the crane. Atlantic would observe the crane. It did not take it apart or perform significant engineering testing. It did not diagnose, troubleshoot or repair the crane. Atlantic had no knowledge of any prior freewheeling of this crane or any other crane.

As clearly reflected by the multiple expert reports, extensive examination and analysis of the crane has been performed. Despite this there is still disagreement among the experts as to the exact cause of the freewheeling. Despite the parties having invested so much into expert analysis of this case, no expert has expressed an opinion that Atlantic Crane was negligent or deviated from the expected standard of care with respect to its inspections of the crane. This absence of expert opinion is compelling. The only expert

comment at all is that of Atlantic's expert, Mark Lawrence, who finds no relationship between Atlantic's inspections and the accident.   (Exhibit 28, p.11).

F.R. Evid. 702 governs the admissibility of expert testimony and provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, an (3) the witness has applied the principles and methods reliably to the facts of the case.

While the rule states the principle of admissibility of expert testimony, the collorary is that when the subject matter is beyond the knowledge of ordinary persons, expert testimony is required to establish sufficient proof of the cause of action.   In this action, the knowledge of the ordinary person is not sufficient to assess the engineering involved and the expectations as to one who is performing a crane inspection.  See, e.g., Spencieri v. Laksy, 94 N.Y.2d 231, 701 N.Y.S.2d 689, 723 N.E.2d 544 (1999); States v. Lourdes Hosp., 100 N.Y.S.2d 208, 762 N.Y.S.2d 1, 792 N.E.2d 151 (2003); Sitaras v. James Ricciardi & Sons, Inc., 545 N.Y.S.2d 937, 154 A.D.2d 451 (2d Dept. 1989).

Indeed, ascribing any fault to Atlantic Crane would be imputing to Atlantic Crane engineering expertise and knowledge sufficient to have diagnosed any latent defect  in the crane prior to the accident, without knowledge of prior freewheeling, expertise, knowledge and foresight greater

than that of the manufacturers, TEREX, Mitchell and TRI and Amtrak which prepared the specifications.

## POINT II

## THERE IS NO PROXIMATE CAUSE BETWEEN ATLANTIC'S CONDUCT AND THE ACCIDENT

In addition to proving negligence, proximate cause is an essential element of a cause of action.

> Proximate cause is an essential element of a cause of action for negligence.   Because of the existence of proximate cause, including what is foreseeable and what is normal, is subject to various inferences, it is generally a question for the fact finder to resolve. Derdiarian v. Felix Contracting Corp., 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 169 (1980). In certain instances, however, where only one conclusion may be drawn from the facts, the question of proximate, or legal cause may be decided as a matter of law. Derdiarian, 51 N.Y.2d at 315, 434 N.Y.S.2d at 170. Given Schiavone's assumption of responsibility for the concrete upon which Brucculeri tripped, there are no contested facts in this case. Thus, the Court may decide the question of proximate cause as a matter of law.
>
> To establish prima facie proximate cause, a plaintiff must generally show that the "defendant's negligence was a substantial cause of the events which produced the injury." Derdiarian, 51 N.Y.2d at 315, 434 N.Y.S.2d at 169.   An intervening act which is not a normal or foreseeable consequence of the defendant's negligence, or which is far removed from a defendant's conduct, may constitute a superseding event which breaks the causal chain.   Id. "The mere fact that a period of time has elapsed between the negligent act and the injury will not prevent the former from being regarded as the proximate cause of the latter." Hoggard v. Otis Elevator Co., 276 NY.S.2d 681, 687 (Sup. Ct. Trial Term, N.Y. County 1966), aff'd 285 N.Y.S.2d (App. Div. 1st Dep't. 1967), appeal denied, 21 N.Y.2D 641, 287 N.Y.S.2d 1026 (1968).  However, "[d]epending upon the nature of the case, a variety of factors may be relevant in assessing legal cause." Derdiarian, 51 N.Y.2d at 315, 434 N.Y.S.2d at 169; see

also Mack v. Altmans Stage Lighting Co., 470 N.Y.S.2d
664, 667 (App. Div. 2d Dep't 1984) (when determining
proximate cause, consideration given to: 1) number of
factors which contribute to harm; 2) whether
defendant has created continuous force up to time of
harm; and 3) lapse of time); Pagan v. Goldberger, 382
N.Y.S.2d 549, 551 (App. Div. 2d Dep't 1976)
("proximate cause must 'be determined upon the facts
of each case upon mixed considerations of logic,
common sense, justice, policy and precedent" (citation
omitted)).

Brucculleri v. National Railroad Passenger Corp., 1996 WL  328,

748 (S.D.N.Y. 1998) (Exh. A)

Atlantic Crane last inspected the crane three months prior to the

accident. The items noted during that inspection are unrelated to the accident.

In any event, the items noted were repaired by others and the crane was

returned to service with no evidence of any problems in the time frame leading

up to the accident. The crane was subsequently inspected prior to each use by

Amtrak. It was inspected on the evening of the accident by operator Rollins.

Nothing untoward was observed and no problems were encountered until the

crane unexpectedly freewheeled, something that it had not done before.

Even had something else been noted in the Atlantic inspection report, it

would have been repaired and returned to service prior to the accident. There is

ample authority to support a finding of no proximate cause in this action

between Atlantic Crane's activities and the accident. See, e.g., Ordonez v. Long

Island R.Co., 492 N.Y.S.2d 442, 112 A.D.2d 923 (2d Dept. 1985); Brookins v.

Pennsylvania R. Co., 202 Misc. 467, 110 N.Y.S.2d 541 (Sup. Ct. 1952);

Brokins, affirmed 280 A.D. 1037, 117 N.Y.S.2d 676 (4th Dept. 1952), Sheehan

v. City of New York, 40 NY2d 496, 387 N.Y.S.2d 92, 354 N.E.2d 832 (1976);

Mack v. Altmans Stage Lighting Company, 98 A.D.2d 468, 470 N.Y.S.2d 664

(Sup. Ct. 1984); Megally v. LaPorta, 253 A.D.2d 35, 679 N.Y.S.2d 649 (2d Dept.

1998); Rodriquez v. ProCable Services, 266 A.D.2d 894, 697 N.Y.S.2d 440 (4th

Dept. 1999); Pisano v. The SS Benny Skou, 346 F.2d 993 (2d Cir. 1965), *cert.*

*denied* 382 U.S. 938, 86 S.Ct. 389. 15 L. Ed.2d 349 (U.S.N.Y. 1965).

# POINT III

## THE CLAIM FOR PUNITIVE DAMAGES MUST BE DISMISSED

As set forth above, Atlantic submits that there is no basis for any claim against it. The pleadings contain, however, claims for punitive damages. There is simply no basis for such a claim against Atlantic. The standard for an award of punitive damages is well established:

> In addressing defendant's argument, the court notes that punitive damages may be awarded to victims where the wrongful death conduct was so depraved or so gross, wanton, malicious, and culpable as to evince utter recklessness, or where it was actuated by evil, reprehensible, or wrongful purposes or motives (Prozeralik v. Capital Cities Communications, Inc., 82 N.Y.2d 466, 478-480, 605 N.Y.S.2d 218, 6267 N.E.2d 34; Home Ins. Co. v. American Home Prods. Corp., 75 N.Y.2d 196, 204, 551 N.Y.A.2d 481, 550 N.E.2d 930; Giblin v. Murphy, 73 N.Y.2d 769, 772, 536 N.Y.S.2d 54, 532 N.E.2d 1282; Walker v. Sheldon, 10 N.Y.2d 401, 404-405, 223 N.Y.S.2d 488, 179 N.E.2d 497; Lee v. Health Force, Inc., 268 A.D.2d 564, 702 N.Y.S.2d 108; Rey v. Park View Nursing Home, 262 A.D.2d 624, 627, 692 N.Y.S.2d 686; V.J.V. Transport Corp. v. Santiago, 173 A.D.2d 537, 538, 570 N.Y.S.2d 138). Punitive damages are not intended to compensate a victim or his or her survivors for pecuniary loss, pain or suffering, or nay other injury (Home Ins. Co. v. American Home Prods., supra, 75 N.Y.2d, at 203, 551 N.Y.S.2d 481, 550 N.E.2d 930; Walker v. Sheldon, supra, 10 N.Y.2d at 404, 223 N.Y.S.2d 488, 179 N.E.2d 497; Le Mistral, Inc. v. Columbia Broadcasting Sys., 61 A.D. 491, 494, 402 N.Y.S.2d 815). The purpose of such damages is to punish wrongdoers and to deter others from engaging in similar conduct (Home Ins. Co. v. American Home Prods. Corp., supra, 75 N.Y.2d at 203, 551 N.Y.S.2d 481, 550 N.E.2d 930; Walker v. Sheldon, supra, 10 N.Y.2d 401, 404, 223 N.Y.S.2d 488, 179 N.E.2d 497; Le Mistral, Inc. v.

<u>Columbia Broadcasting Sys.</u>, supra, 61 A.D. 494, 402
N.Y.S.2d 815).

<u>Adelman v. Adelman</u>, 191 Misc.2d 281, 284, 741 N.Y.S.2d 841, 844-5
(Sup. Ct. 2002); <u>Rudolph v. Lynn</u>, 16 A.D.3d 261, 792 N.Y.S.2d 410 (1st Dept.
2005); <u>Williams v. Pelican Pest Control Inc.</u>, 11 A.D. 3d 454, 782 N.Y.S.2d 748
(2d Dept. 2004); <u>Evans v. Stranger</u>, 307 A.D.2d 439, 762 N.Y.S.2d 678 (3rd
Dept. 2003); leave for appeal denied, 4 N.Y.3d 707, 828 N.E.2d 620, 798
N.Y.S.2d 517 (2005); <u>Kopec v. Hempstead Gardens Inc.</u>, 264 A.D.2d 714, 696
N.Y.S.2d 53 (2d Dept. 1999); <u>Seynave v. Hudson Moving and Storage Inc.</u>, 261
A.D.2d 168, 690 N.Y.S.2d 16) (1st Dept. 1999).

There is no conduct in this case on the part of Atlantic remotely
approaching the necessary standard.

## CONCLUSION

For the reasons set forth above, summary judgment should be entered dismissing all claims against Atlantic Crane Inspection Services, Inc.

RICHARD E. SNYDER, ESQ.
**MORGAN MELHUISH ABRUTYN**
651 West Mount Pleasant Avenue
Suite 200
Livingston, New Jersey 07039
Attorneys for Defendant
ATLANTIC CRANE INSPECTION
SERVICES, INC.
(RES 9998)

535384

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.                                                                    Page 1
Not Reported in F.Supp., 1996 WL 328748 (S.D.N.Y.)
(Cite as: 1996 WL 328748 (S.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Antonio BRUCCULERI, Plaintiff,
v.
NATIONAL RAILROAD PASSENGER COR-
PORATION (AMTRAK) and Slattery Associates,
Inc., Defendants.
SLATTERY ASSOCIATES, INC., Third-Party
Plaintiff,
v.
SCHIAVONE CONSTRUCTION CO., INC.,
Third-Party Defendant.
No. 92 CIV 0970 LMM.

June 13, 1996.

*MEMORANDUM AND ORDER*

McKENNA, District Judge.

*1 This motion arises from a negligence claim
which the Plaintiff, Antonio Brucculeri
("Brucculeri"), brought against Defendants Nation-
al Railroad Passenger Corporation (Amtrak)
("Amtrak") and Slattery Associates, Inc.
("Slattery"), on January 31, 1992. The case results
from injuries he allegedly suffered on May 15,
1991, when he tripped on concrete debris while
working as a trackman at the Sunnyside train yard
in Queens. Slattery initially brought a third-party
claim against Schiavone Construction Co., Inc.
("Schiavone"), alleging that Schiavone's negligence
caused Brucculeri's injuries. Schiavone moved for
summary judgment against Slattery, filing a brief
which Amtrak opposed on Slattery's behalf. By
stipulation dated December 19, 1995, Slattery dis-
continued its third-party action against Schiavone,
rendering the motion moot. Amtrak subsequently
served a third-party complaint against Schiavone
and, by agreement of the parties, the already-filed

summary judgment motion against Slattery was
deemed to be a motion for summary judgment
against Amtrak. The Court now decides this motion
based upon the previously filed briefs. For the reas-
ons stated below, Schiavone's motion for summary
judgment is granted and the third-party complaint
dismissed. As previously decided, a pretrial order is
to be filed within 28 days of this decision.

I. Background

Brucculeri is employed by Amtrak as a laborer, or
"trackman," and was stationed at the Sunnyside
Yard ("the Yard") in Long Island City, Queens dur-
ing all relevant periods. He claims that on May 15,
1991, while performing his duties, he tripped on a
piece of concrete negligently left in the Yard, sus-
taining personal injuries as a result.

The parties do not dispute that the concrete came
from the Thompson Avenue Bridge, a highway
bridge located on and above the Yard in the area
where Brucculeri tripped. Starting sometime in
1982 or 1983, Schiavone, a construction company,
contracted with the State of New York, Department
of Transportation, to do renovation work on the
bridge, part of which involved removing pieces of
concrete. Schiavone's duties included cleaning up
any concrete debris which fell into the Yard.

For reasons not relevant to this motion, Schiavone
worked up until May of 1988, at which time it left
the worksite and did not return. Two years later, be-
ginning in May of 1990, Slattery began working on
the bridge. As was the case for Schiavone, Slattery
was responsible for cleaning up any concrete which
fell into the Yard during the renovation.

The parties hotly contest whether Schiavone or
Slattery is responsible for the particular piece of
concrete upon which Brucculeri tripped. The depos-
ition testimony suggests that either of the two may

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 328748 (S.D.N.Y.)
**(Cite as: 1996 WL 328748 (S.D.N.Y.))**

Page 2

have left the concrete behind. For the purpose of this motion, however, Schiavone assumes responsibility.[FN1] Schiavone argues that even if it did leave the concrete, this did not proximately cause Brucculeri's fall. It emphasizes the three year time lapse between the allegedly culpable conduct and Brucculeri's accident, as well as the fact that it had no right to enter the premises during this interval. The issue before the Court on this motion is whether these circumstances establish proximate cause between Schiavone's allegedly negligent act and Brucculeri's fall.

## II. Discussion

**\*2** Proximate cause is an essential element of a cause of action for negligence. Because the existence of proximate cause, including what is foreseeable and what is normal, is subject to various inferences, it is generally a question for the fact finder to resolve. *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 169 (1980). In certain instances, however, where only one conclusion may be drawn from the facts, the question of proximate, or legal cause may be decided as a matter of law. *Derdiarian*, 51 N.Y.2d at 315, 434 N.Y.S.2d at 170. Given Schiavone's assumption of responsibility for the concrete upon which Brucculeri tripped, there are no contested facts in this case. Thus, the Court may decide the question of proximate cause as a matter of law.

To establish prima facie proximate cause, a plaintiff must generally show that the "defendant's negligence was a substantial cause of the events which produced the injury." *Derdiarian*, 51 N.Y.2d at 315, 434 N.Y.S.2d at 169. An intervening act which is not a normal or foreseeable consequence of the defendant's negligence, or which is far removed from a defendant's conduct, may constitute a superseding event which breaks the causal chain. *Id.* "The mere fact that a period of time has elapsed between the negligent act and the injury will not prevent the

former from being regarded as the proximate cause of the latter." *Hoggard v. Otis Elevator Co.*, 276 N.Y.S.2d 681, 687 (Sup. Ct. Trial Term, N.Y. County 1966), *aff'd*, 285 N.Y.S.2d 262 (App. Div. 1st Dep't 1967), *appeal denied*, 21 N.Y.2d 641, 287 N.Y.S.2d 1026 (1968). However, "[d]epending upon the nature of the case, a variety of factors may be relevant in assessing legal cause." *Derdiarian*, 51 N.Y.2d at 314, 434 N.Y.S.2d at 169; *see also Mack v. Altmans Stage Lighting Co.*, 470 N.Y.S.2d 664, 667 (App. Div. 2d Dep't 1984) (when determining proximate cause, consideration given to: 1) number of factors which contribute to harm; 2) whether defendant has created continuous force up to time of harm; and 3) lapse of time); *Pagan v. Goldberger*, 382 N.Y.S.2d 549, 551 (App. Div. 2d Dep't 1976) ("proximate cause must 'be determined upon the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent'" (citation omitted)).

The "doctrinal sweep" of proximate cause is so broad that "a flexibility of approach, almost intuitive in nature, must be used."*Id.* at 552. The decisions in other cases must serve only as examples whereby the concept is applied. *Id.* The Court in *Pagan* provided some useful guidelines:

1. The test of status- is there an existing legal relationship between the parties?

....

2. The test of temporal duration- is the occurrence of the injury tied to the claimed negligent act or omission within a reasonable lapse of time?

....

3. The test of spatial relation- is the occurrence of the injury close or far in distance from the point of the claimed negligent act or omission?

**\*3** ....

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 328748 (S.D.N.Y.)
(Cite as: 1996 WL 328748 (S.D.N.Y.))

Page 3

4. The test of foreseeability- is the claimed negligent act or omission reasonably predictable as a cause of the occurrence of the injury?

....

5. The test of public policy- is there an identifiable policy which either protects the victim of the injury or forbids liability for the injury?

....

*Id.* Taking into account the facts of this case in light of these considerations, as well as basic logic and common sense, the Court rules that Schiavone's allegedly negligent act of leaving behind concrete debris at some date before its departure from the Yard in May of 1988 did not proximately cause Brucculeri's fall three years later.

The Court presumes that the test of spatial relation favors a denial of summary judgment. Brucculeri tripped on concrete located, most likely, in the same place where Schiavone left it. The remainder of the factors, however, support Schiavone's motion for summary judgment.

Schiavone and Brucculeri had no legal relationship at the time of the accident, nor did Schiavone owe any duty to Amtrak, given the fact that it was no longer under contract. In fact, Schiavone did not even have access to the premises and presumably would have been trespassing if it attempted to enter the Yard.

As for temporal duration, the injury occurred at least three years after Schiavone vacated the premises. This is a sufficient lapse of time to break the causal chain. Had Schiavone left behind some particularly hazardous materials-toxic chemicals, for example- which, by their nature, might customarily pose an unusual threat of injury after such a time period, the Court would view the question differently. Schiavone, however, is charged with leaving nothing more than a piece of concrete, described by the Plaintiff as measuring no more than twelve inches long. (Amtrak Br. at p. 5). This is not an inherently hazardous item which would generally pose a heightened risk of injury if left on the ground for three years.

It is certainly foreseeable that concrete debris might cause someone to fall. Under these circumstances, however, it is not foreseeable that a rock left negligently on premises from which the negligent party has been excluded would nonetheless remain exposed and cause injury three years later. This is especially true given the fact that both Amtrak and Slattery occupied the premises and had an interest, as well as a responsibility, to keep the Yard free of such debris.

Perhaps the strongest argument in favor of denying proximate cause in this instance is the public policy interest at stake. If contractors were to be held responsible years later for ordinary debris negligently left behind on work sites, there would be no impetus for subsequent contractors or possessors to maintain the premises in a safe, clean manner. The public interest requires that current contractors and owners take responsibility for the safety and upkeep of their property or work space. In this case, both Slattery and Amtrak had ample opportunity to discover any remaining debris negligently left by Schiavone and clean it up, particularly since it does not appear that the concrete was particularly difficult to observe or remove. As a practical matter, it would be nearly impossible to discern whether a particular piece of concrete originated from Slattery or Schiavone. Thus, the Court holds that once Slattery took over the bridge contract, it became responsible for cleaning up *any* concrete found laying on the property. Slattery could have chosen to reject the job until Schiavone's concrete was removed, or to charge extra to remove the debris itself. It should not be permitted to avoid its obligations, however, by making impractical distinctions between various bits of rock.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                          Page 4
Not Reported in F.Supp., 1996 WL 328748 (S.D.N.Y.)
**(Cite as: 1996 WL 328748 (S.D.N.Y.))**

*4 Similarly, Amtrak had three years to remedy any shortcomings in Schiavone's cleanup work. The fact that Schiavone may have negligently left behind debris does not forever release Amtrak from its responsibility to keep its worksite free of hazards.

The Court does not suggest that there is a specific point in time at which one contractor's negligent actions accrue to the detriment of a second contractor and a property owner. The determination of proximate cause is always fact specific. The Court simply holds that under these facts, where Amtrak had three years and Slattery one year to discover and remove the concrete, there is no longer proximate cause between Schiavone's negligence and Brucculeri's fall. Since Amtrak has failed to raise a genuine issue of triable fact as to this issue, it has failed to prove an essential element of its negligence claim against Schiavone. Schiavone's motion for summary judgment is therefore granted and Amtrak's third-party claim against Schiavone dismissed.

### III. Conclusion

Plaintiff Amtrak has not established a genuine issue of triable fact as to the element of proximate cause between Schiavone's alleged negligence and Brucculeri's injuries. The motion for summary judgment is therefore granted and the third-party claim against Schiavone dismissed.

SO ORDERED.

> FN1. Amtrak ignores this fact, spending its entire brief arguing that summary judgment must be denied since there is a genuine issue of material fact as to who was responsible for the concrete. Given that Schiavone concedes responsibility for leaving the concrete for purposes of this motion, the question is not at issue.

S.D.N.Y.,1996.

Brucculeri v. National Railroad Passenger Corp.
Not Reported in F.Supp., 1996 WL 328748 (S.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.