**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDLEY GAYLE,<br><br>          Plaintiff,<br><br>     vs.<br><br>NATIONAL RAILROAD PASSENGER CORP., T.C. JOHNSON COMPANY, TRANSPORTATION RESOURCES INC., MITCHELL EQUIPMENT CORPORATION, CRESCENT CONTRACTING, INC., STV INCORPORATED, HATCH MOTT MACDONALD, INCORPORATED STV/HMM, TEREX CORPORATION, KOEHRING CRANES, INC. dba TEREX CRANES WAVERLY TEREX CRANES, INC., and ATLANTIC CRANE INSPECTION SERVICES INC.<br><br>          Defendants. | **Civil Action No.: 06 Civ 6956 (PAC)(GWG)**<br><br><br>**ECF CASE** |

**REPLY BRIEF IN SUPPORT OF DEFENDANT**
**ATLANTIC CRANE'S SUMMARY JUDGMENT MOTION**

**Richard E. Snyder, Esq.**
**Of Counsel and On the Brief**

          **MORGAN MELHUISH ABRUTYN**
                    651 West Mount Pleasant Avenue
                    Suite 200
                    Livingston, New Jersey 07039
                    Attorneys for Defendant
                    ATLANTIC CRANE INSPECTION
                    SERVICES, INC.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

ARGUMENT...................................................................................................... 2

POINT I
SUMMARY JUDGMENT SHOULD BE
GRANTED TO ATLANTIC CRANE ................................................................. 2

## TABLE OF AUTHORITIES

**Page**

Federal Cases

Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC, 2009 WL 1803458 ....................... 3

Travelers International AG v. Trans World Airlines, Inc., 722 F.Supp.
1087, 1129 (SDNY 1989) ................................................................................................. 4

**ARGUMENT**

**POINT I**

**SUMMARY JUDGMENT SHOULD BE GRANTED TO ATLANTIC CRANE**

While the opposition attempts to create issues to defeat the motion, the attempted issues are either not genuine issues of fact and/or are not material to the motion.

It is suggested that Atlantic Crane was obligated to have inspected the accident crane in May, June and/or July of 2004, the last inspection having been in April 2004.  In other words, the argument is that Atlantic was obligated to inspect every AMTRAK piece of equipment every month.  This argument has no support.

The agreement with AMTRAK contains no such explicit obligation. (Snyder Decl., July 15, 2009, Exhibit 19)   If the agreement itself were not sufficient, the course of dealing between the parties is conclusive. AMTRAK had control of where the equipment was and what was in use.   Atlantic had no such control. Atlantic would inspect the equipment at sites made available by AMTRAK.   Amtrak knew full well what Atlantic was doing.   AMTRAK never required Atlantic to inspect every piece of equipment every month nor did Amtrak make every piece of equipment available every month.   The course of dealing between the parties is evidential of the parties' interpretation of the contract.   Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC, 2009 WL 1803458 (SDNY at p.5); Travelers International AG v. Trans World Airlines, Inc., 722 F.Supp. 1087, 1129 (SDNY 1989).  Having been in accord with the

procedure, indeed, having been in control of the procedure, for about six years prior to the accident, AMTRAK cannot now voice a credible opposite position.

Indeed, Amtrak itself has said that its inspections by its employees satisfied the regulations and AMTRAK's own rules, confirming that it was not necessary, or expected that Atlantic inspect every piece of equipment every month. See Snyder Decl. July 15, 2009, Exhibit 27; Deposition of McMahon II, Tr.123:13-124:3.

The verbiage in some of the opposition is apparently meant to suggest that Atlantic had an obligation to guarantee the safety of the crane irrespective of the depth and scope of the effort required to achieve such a guarantee. It is agreed that Atlantic had an obligation to exercise reasonable care within the scope of the inspections it undertook. Even Amtrak agrees that the duty is one of reasonable care, not a guarantee of anything and everything. Amtrak Brief p.8.

It is also suggested that Atlantic's scope of inspections had to be broader than it was. The Hottensteins were experienced in the industry prior to forming Atlantic Crane. They are members of the industry association. The only testimony is that their inspections were pursuant to industry standards. See Snyder Decl. July 15, 2009, Exhibit 20; Deposition of William Hottenstein, Tr. 278:21-280:11. There is no expert or other competent testimony to contradict that. There is only the argument of counsel. Parenthetically, the OSHA website document offered by Crescent Contracting and unsupported by any foundation in testimony, is inadmissible. It clearly refers to OSHA safety inspections which deal with issues beyond the scope of a routine crane

inspection. For example, it discusses safety operational issues with the crane, which is something beyond what Atlantic ever undertook to do. There is no expert testimony that establishes that Atlantic had an obligation to comply with every aspect of this checklist or that persons in the industry in Atlantic's position did so.

In fact, perhaps the most telling point in the opposition is one of omission. Despite the multiple parties having obviously invested much in expert analysis in this case, not a single party has proffered an expert opinion that Atlantic Crane deviated from expected standards of care in its inspections. Obviously, it would have been an easy thing for any of the opposition experts to have added a paragraph to that effect in their reports, if it was a supportable position.

While the Hottensteins are qualified as crane inspectors and have, obviously, some knowledge of the equipment, they are not mechanics; they did not trouble shoot or diagnose mechanical issues; and they did not perform repairs. See Snyder Decl. July 15, 2009, Exh. 18, Deposition of Clarence Hottenstein T8:2-13:15; Exh. 20, Deposition of William Hottenstein T13:16-14:24; 19:9-27:8.; Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T11:21-24; Exh. 20, Deposition of William Hottenstein T:222:6-223:3; Snyder Decl. July 15, 2009, Exh. 18, Deposition of Clarence Hottenstein T78:23-80:7; 110:19-23; Exh. 20, Deposition of William Hottenstein T:149:11-16; 168:4-9; 248:25-249:9; Exh. 22, Deposition of Peveraro I T119:22-120:7; See Snyder Decl., Exh. 18, Deposition of Clarence Hottenstein T107:3-8; Exh. 20, Deposition of William Hottenstein T149:6-25; Exh. 23, Deposition of Charles

McMahon I T22:22-23:25; Exh. 24, Deposition of Peveraro II T:208-11-20. AMTRAK itself took care of the maintenance on the equipment. This relates again to the course of dealing between the parties and what Atlantic was expected to do or not do under the contract. It also relates to the expected standard of care of persons in the position of and with the capabilities of Atlantic Crane.

The opposition suggests that the Hottensteins should have foreseen from the fact that they did note some hydraulic or high rail deficiencies on some of the inspection reports that there was an inherent chronic problem with the crane that could lead to a dangerous situation, i.e. freewheeling. This attempts to attribute expertise, knowledge and foresight to Atlantic Crane well beyond anyone's reasonable expectations. That a crane with hydraulics would exhibit signs of leakage in and of itself evidences nothing alarming. Every expert who commented on the point agreed that all hydraulics leak. See Snyder Decl. Oct. 22, 2009, Exhibit 47. Deposition of Mark Lawrence, Tr. 56:16-57:14; Exh. 48, Deposition of Salvatore Malguarnera, Tr. 45:17-47:1; Exh. 49, Deposition of Frederick Norvelle, Tr. 133:6-134:16; 211:20-212:1. Observable leaks were noted and corrected. By simple analogy, a truck which had a leak in one spot on one occasion and then had a leak on another spot on another occasion would not signal to anyone that there was a singular inherent safety problem with the truck. Machinery typically has problems which are taken care of by repairs and maintenance. After extensive investigation and testing, the experts in this case come to different conclusions. The opposition argument is that the Hottensteins, who are not Ph.D. engineers like almost all of the experts, should

have had the wisdom and foresight to have scoped out the inherent problem with the crane on which the experts still disagree. This would attribute a greater burden of foresight on Atlantic Crane than on Terex Mitchell or TC Johnson, none of whom highlighted or warned of a propensity to freewheel in the crane.  See, e.g., Snyder Decl. July 15, 2009, Exhibit 39, p.viii. And a wisdom and foresight greater than AMTRAK which prepared its own specifications for the crane. See Snyder Decl. Exh. 14, Deposition of Joseph J. Vanderbosch, T155:2-164:10; 169:8-10; Exh. 15; Exh. 16.  This proposition is simply not believable or credible and particularly so without express expert support.  No layman can say that Clarence or William Hottenstein had the ability to have made such a diagnosis based on what they observed and without knowledge of prior freewheeling.

There is no linkage of the deficiencies noted in the inspection of April 2004 to the accident.  See Snyder Decl. July 15, 2009, Exhibit 28, Lawrence Report, pp.5, 10-11. While there may be a question as to whether, administratively, Atlantic should have issued the certificate when it apparently did, this is not a material issue. The items noted as deficiencies on the report would not have affected the safety of the crane.  See Snyder Decl. July 15, 2009, Exhibit 20, Deposition of William Hottenstein, Tr.163:10-168:9; 286:15-287:19. The only even superficially arguable exception would be the shutting off when the boom is activated, which item was in any event repaired by AMTRAK through A-1 that same April. See Snyder Decl., Exh. 23, Deposition of McMahon I T:200:19-204:25; Exh. 22, Deposition of Peveraro I T118:7-24; Exh. 24, Deposition of Peveraro II T24:10-27:21; Exh. 25, Deposition of Shearer

T12:9-13:2; 38:6-40:12 and Exh. 29. Even if Atlantic had withheld the certificate until the A-1 repair, it would have been issued the same month and the crane would have been returned to service. There is no evidence in the record of any further problems with the crane after April but before the accident in July. See Snyder Decl., Exh. 27, Deposition of McMahon II T:122:23-124:3; Exh. 22, Deposition of Peveraro I T33:21-34:4; 106:6-13; 156:18-157:24. There is no evidence of observable leaks in April or on the evening of the accident. See Snyder Decl., Exh. 30, Deposition of David Rollins I T:62:10-64:15; Exh. 31, Deposition of David Rollins II T:237:8-13; Exh. 32, Deposition of Brian Earp T74:17-25.; Snyder Decl., Exh. 21, Deposition of Tripp T54:10-23; 57:11-60:2; 194:25-195:16; Exh. 23, Deposition of McMahon I T:48-2-50:1; Exh. 27, Deposition of McMahon II T:24:4-7; Exh. 22, Deposition of Peveraro I T:80:25-81:11; Exh. 33, Deposition of William Zwolinski T176:9-177:20.

There is no argument in opposition that there is a viable claim for punitive damages against Atlantic.

For all of the aforesaid reasons, it is respectfully submitted that there are no genuine issues of material fact sufficient to defeat Atlantic Crane's motion.

### CONCLUSION

For the reasons set forth above, summary judgment should be entered dismissing all claims against Atlantic Crane Inspection Services, Inc.

RICHARD E. SNYDER, ESQ.
**MORGAN MELHUISH ABRUTYN**
651 West Mount Pleasant Avenue
Suite 200

Livingston, New Jersey 07039
Attorneys for Defendant
ATLANTIC CRANE INSPECTION
SERVICES, INC.
(RES 9998)